CLARKE, P. J., McLAUGHLIN, SCOTT and SMITH, JJ., concurred.

Exceptions sustained, new trial ordered as to defendant Belle Neuberger, with costs to her against the plaintiff to abide the event. Order to be settled on notice.

---

JOHN C. RODGERS, Respondent, v. H. S. KERBAUGH, INCORPORATED, and Others, Appellants, Impleaded with the BANKERS TRUST COMPANY, Defendant.

First Department, December 1, 1916.

Pleading — joinder of causes of action — action for fraud and conspiracy.

Plaintiff, who owned a valuable construction contract with the city of New York, assigned the same with plant, materials, money earned, etc., to the defendant corporation in consideration, among other things, of the defendant's notes. Thereafter the defendant claimed that it was in financial difficulties and could not continue to perform the contract unless it could obtain a loan, in order to do which it would be necessary for plaintiff to surrender and cancel the notes. It was represented to plaintiff that if he surrendered his notes a new corporation would be organized and plaintiff allowed to take shares of the preferred stock in place of his notes and deposit them for a given time as a security against loss to the defendant in performing the contract. Plaintiff in reliance upon said representations entered into an agreement embodying the proposed plan and setting forth some of the representations. Plaintiff surrendered his notes, deposited the same as security and then learned that the representations which had been made to him were false and that the defendants had sought to destroy the value of the contract.

Provisions of the complaint examined, and *held*, that, notwithstanding the number of acts set forth as having been performed by defendants in furtherance of their conspiracy to fraudulently deprive the plaintiff of the notes in question and their contention that there are three causes of action attempted to be set forth, but a single cause of action is stated, which is for the restoration of the notes, for the rescission of the various agreements and setting aside of the various acts by or under which the defendants, in furtherance of their conspiracy, sought to effectuate their common purpose of depriving plaintiff of his property — the notes in question.

The issuance of the stock to plaintiff was but a step in the unlawful plot, and plaintiff sought to base no rights on his ownership thereof.

SCOTT, J., dissented, with opinion.

APPEAL by the defendants, H. S. Kerbaugh, Incorporated, and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 21st day of September, 1916, denying their motion to require plaintiff separately to state and number the causes of action set forth in the complaint.

*William D. Guthrie,* for the appellants.

*Thomas F. Conway,* for the respondent.

DOWLING, J.:

The complaint herein sets forth at length the history of the transactions between plaintiff and the defendants, H. S. Kerbaugh, Inc., Kerbaugh-Empire Company, Henry S. Kerbaugh and Edward D. Adams, having to do with a certain contract known as No. 9 entered into between plaintiff and his son, James M. Rodgers, and John J. Hagerty, of the one part, and the board of water supply of the city of New York, of the other, for the building of the Kensico dam and appurtenant works in the towns of Mount Pleasant, Harrison and North Castle, Westchester county, N. Y., for the aggregate amount of $7,953,050. Plaintiff bought out the interest of James M. Rodgers and Hagerty in the contract, and thereafter entered upon its performance, and had invested therein the net sum of $371,692.50, as was agreed upon between him and H. S. Kerbaugh, Inc. (hereinafter referred to as the corporation), when, on September 13, 1910, plaintiff entered into an agreement

with Kerbaugh, whereby the plaintiff's contract was to be assigned to Kerbaugh or the corporation, with all the plant, materials, moneys earned, bank balances and other contracts, in consideration of which the corporation agreed to assume all liability of the plaintiff under the contract, and to fully perform the same according to its terms; to protect plaintiff from all liability thereunder; to procure the cancellation of the bond he had given to secure the performance of the contract; or, if that could not be done, to have Kerbaugh or the corporation sign the bond as counter-indemnitors. Kerbaugh was to give plaintiff his individual bond in the sum of $1,000,000, and to have his life insured for $250,000 for plaintiff's benefit, and for $250,000, payable to his own estate, as additional security for the performance of the contract. It was further agreed that plaintiff, in consideration of the assignment of the contract, should be paid $671,692.52 in six notes of the corporation, indorsed by Kerbaugh individually, maturing from September 13, 1911, to September 13, 1917, the first three bearing interest at six per cent, the last three bearing no interest. On September 13, 1910, the written assignment of the contract was executed and delivered by plaintiff to the corporation, and at the same time the notes referred to were delivered to plaintiff, together with the $1,000,000 bond; but the life insurance policies were not obtained, nor was plaintiff released from his bond. Thereupon the corporation took possession of the plant and property of the plaintiff and entered upon the performance of the contract. It is alleged that the contract at the time of its assignment was of great value and could have been fully performed, with large resultant profits, estimated at $1,500,000 by the corporation and its engineers. The corporation represented that it had, and would use, ample facilities, plant, tools, machinery, equipment, organization and capital adequate to complete the contract to the best advantage and with the greatest economy. The corporation up to March 31, 1916, had received on the contract a total of $7,247,493.13. It is then alleged that about March, 1911, the corporation and Kerbaugh represented that the corporation was in financial straits and could not continue to perform the contract, but must default unless it could obtain a loan of $1,200,000, in order to do which

it would be necessary for plaintiff to surrender and cancel the notes aforesaid and the indebtedness they represented; that Kerbaugh's bond could not be made good, although he had represented to plaintiff that he was worth $2,200,000 over his liabilities; that plaintiff, if the corporation discontinued work, would be liable on his bond.   It was then represented that defendant Adams, if plaintiff surrendered his notes, would organize a new corporation under the laws of the State of New York, with a capital of $4,000,000, half in preferred and half in common stock, whereof $1,200,000 of the preferred stock would be sold at par for cash and the proceeds loaned to the original corporation to enable it to perform the contract, and plaintiff was to take 4,000 shares of the new preferred stock in place of his notes and the liability they represented, and was then to deposit the same for a given time as a guaranty against any ultimate loss to the corporation in performing the contract.   The representations theretofore made by the corporation and Kerbaugh were in substance repeated by Adams, at whose request, and in reliance upon the representations, plaintiff entered into a written agreement with Adams, annexed to the complaint, embodying the plan proposed and setting forth some of the representations.   It was also represented to plaintiff by Adams that he was not interested, financially or otherwise, in the old corporation, in its financial condition or the obtaining of the loan.

The new corporation, defendant Kerbaugh-Empire Company, was organized April 12, 1911, with a capital of $4,000,000 divided equally in preferred and common stock. Plaintiff having been informed by Adams, Kerbaugh and the old corporation that 12,000 shares of its preferred stock had been sold at par for cash and that the proceeds ($1,200,000) had been loaned to the old corporation, secured by its note, in reliance on the statements made to him on May 10, 1911, entered into an agreement in writing with the new and old corporations, whereby having delivered up his six notes for cancellation and received in return 4,000 shares of the preferred stock of the new corporation, he deposited said stock with the Mercantile Trust Company as depositary for the purposes of the agreement, to secure the new corporation against ultimate loss in the performance of the assigned contract.   The written

First Department, December, 1916.        [Vol. 174.

agreement is set forth as an exhibit annexed to the complaint and refers to the plaintiff's agreement with Adams and also contains certain of the alleged representations.  The Mercantile Trust Company has been succeeded as depositary by the Bankers Trust Company, which is made a party defendant only that its duty in respect to the deposited stock may be determined. It is alleged that when plaintiff was induced to, and did deposit the notes, they were worth their full face value.  It is then set forth that as a matter of fact the representations made by the defendants Kerbaugh and the two corporations were false, and the particularities of their falsity are set forth at length, with the facts relied on to establish such falsity.  It is alleged that plaintiff relied on the false and untrue statements, and that his discovery of their falsity was deferred because the corporations caused false and misleading entries to be made in their books.  The allegations thus epitomized comprise the first twenty-nine paragraphs of the complaint and carry the story of plaintiff's wrongs down to his acceptance of the preferred stock in the new corporation in exchange for the notes he formerly held and to his discovery of the falsity of the representations by which he had been induced to make the exchange.  The complaint then sets forth at length the various methods, expedients and devices by which Adams, Kerbaugh and the two corporations attempted to convert a contract on which there had been an estimated profit of $1,500,000 into one on which there was an apparent loss of $716,135.64, so as to sustain the contention that plaintiff, having been deprived of his notes to obtain his preferred stock, must now, under his agreement, lose that preferred stock as well to help make good the new corporation's loss in performing the contract, as provided in the agreement.

Defendants contend that three causes of action are attempted to be set forth in the complaint: (1) For rescission of the two contracts annexed to the complaint, on the ground of fraud; (2) for damages for breaches of these contracts; (3) for fraud in the performance of the contracts.

Plaintiff insists that while many wrongful acts of defendants are set forth they are but successive steps in a common purpose, which was to cheat and defraud the plaintiff out of

the notes held by him and their value and in order to enrich themselves to the amount and value of said notes.

The allegations of the complaint to this effect are as follows: " XLI. Plaintiff hereby alleges and charges, upon information and belief, the defendants, H. S. Kerbaugh, Incorporated, the Kerbaugh-Empire Company, Edward D. Adams and Henry S. Kerbaugh, with having, prior to the execution of said contracts of March 29, 1911 (said Exh. ' A-1 ') and of May 10, 1911 (said Exh. ' A '), formed the deliberate design and purpose, of fraudulently and by means of deceit and misrepresentations, inducing the plaintiff to surrender said notes to said defendant H. S. Kerbaugh, Incorporated, without consideration, and that to carry out said design and purpose, they induced this plaintiff to sign, execute and deliver each of said contracts, to deliver up said notes for cancellation, and to accept in lieu and in consideration thereof said four thousand shares of preferred stock, to deposit the same as a pledge against ultimate loss in the performance of said Contract No. 9, and then to so increase the cost of the performance of said contract, by wrongfully and illegally charging against such cost the improper overhead and other expense hereinbefore described for their own benefit and for the benefit of each of them and in order to produce and show a loss equal to, or exceeding, the amount of said stock so pledged, so as to entitle them, or the said H. S. Kerbaugh, Incorporated, to the same, and to its delivery by said depositary to them or to the said H. S. Kerbaugh, Incorporated, instead of to the plaintiff; and that the different acts and things prior to, at the time of, and subsequent to the execution of said contracts and the deposit of said stock by plaintiff, done by them and each of them in the premises, as hereinbefore stated, were all steps in a fraudulent scheme and conspiracy, in which all of said defendants participated, to cheat and defraud plaintiff out of said notes and the value of the same, and were all done and performed with the intent, view and purpose of accomplishing such result, and in order to enrich themselves at plaintiff's expense to the amount and value of said notes and stock." It may be that the last two words " and stock " (if not inadvertently used) are superfluous and on motion should be stricken out. For they have

no relevancy to the cause of action, which, as I view it, is for the fraud committed by defendants in conspiring by false representations to deprive plaintiff of his notes or their value; the issue and subsequent effort to take possession of the stock are but incidental thereto, and plaintiff could not recover the value of the stock under his present form of pleading, but only the value of the notes obtained from him by fraud.

But the complaint in my opinion sets forth but a single cause of action, which is for the restoration to plaintiff of the notes belonging to him and for the rescission of the various agreements and the setting aside of the various acts by or under which defendants in furtherance of their conspiracy sought to effectuate their common purpose of depriving plaintiff of his property, the notes in question. The issuance of the preferred stock to plaintiff was but a step in this unlawful plot. Plaintiff seeks to base no rights on his ownership of this stock. On the contrary, he repudiates any title to it. By the paragraph of his complaint numbered XLII he sets forth: "Plaintiff hereby tenders back to said defendants H. S. Kerbaugh, Incorporated, and Kerbaugh-Empire Company and said Adams or to whichever of them is or may be entitled to the same, the certificates for said four thousand shares of the preferred stock of the latter company, received by plaintiff and deposited with The Mercantile Trust Company, and its said successor, for the purpose hereinbefore stated, and which are numbered 1 to 40, both inclusive, and also offers, and stands ready to make and deliver, a formal and legal assignment or transfer of the same, if necessary, to vest the legal title thereto in the transferee, and hereby consents and requests that said trust company deliver said certificates to said H. S. Kerbaugh, Incorporated, and to said Kerbaugh-Empire Company, or to said Adams or to whichever of them is or may be entitled thereto. Plaintiff also stands ready, and hereby offers to credit said dividends upon said notes or to do with the same as this court shall decide or adjudge to be just and equitable in the premises."

The specific relief sought is: "*First,* That said contracts of March 29 and May 10, 1911 (Exhibit A-I and A), and each and both of them, be rescinded, annulled and set aside. *Second,* That said notes, and each and all of them, described in this

complaint, be decreed to belong to the plaintiff. *Third,* That the plaintiff recover of and from said defendants H. S. Kerbaugh, Incorporated, Kerbaugh-Empire Company, Edward D. Adams and Henry S. Kerbaugh, the following sums of money, viz: three hundred seventy-one thousand six hundred ninety-two dollars and fifty-two cents ($371,692.52), with interest thereon from September 13, 1910, and the further sum of three hundred thousand dollars ($300,000), with interest thereon from May 10, 1911. *Fourth,* That plaintiff be adjudged not to be a stockholder of said defendant Kerbaugh-Empire Company, and that his name be stricken and removed from the records of said company as a stockholder therein, as of the date of the delivery of the four thousand shares of preferred stock of said company to him, and that said defendants, and each and all of them, be required, compelled and decreed to indemnify and protect plaintiff against any and all liability growing, or which may arise out of the fact of plaintiff's appearing to be a stockholder of record in said company."

(The amounts set forth in the third prayer for relief are those of the notes in question, with interest corresponding to the tenor of the notes.) This prayer for judgment confirms plaintiff's contention that his cause of action is a single one, for the restoration to him of the notes he originally held and the declaration of his rights thereupon. I am of the opinion that despite the number of acts set forth as having been performed by defendants in furtherance of their conspiracy to fraudulently deprive plaintiff of the notes in question, but a single cause of action is stated in the complaint. I, therefore, vote to affirm the order appealed from, with ten dollars costs and disbursements to respondent.

LAUGHLIN and SMITH, JJ., concurred; CLARKE, P. J., and SCOTT, J., dissented, with opinion.

SCOTT, J. (dissenting):

The plaintiff alleges that on September 13, 1910, he assigned and transferred to defendant H. S. Kerbaugh, Inc., a certain valuable contract with the city of New York known as contract No. 9, for the construction of the Kensico dam and appurtenances, together with the plant provided and installed for

First Department, December, 1916.          [Vol. 174.

carrying on said contract, and the moneys due or to come due thereon, for which he received promissory notes aggregating $671,692.52 made by H. S. Kerbaugh, Inc., and indorsed by Henry S. Kerbaugh individually, and thereupon the defendant H. S. Kerbaugh, Inc., took possession of said plant and continued and has ever since continued the performance of said contract. It is then alleged that in the spring of 1911, owing to certain false representations made to him by the defendants, other than the Bankers Trust Company, he was induced to enter. into two agreements annexed to the complaint and to surrender the promissory notes above mentioned, and to accept in lieu thereof stock in the defendant Kerbaugh-Empire Company. The first twenty-nine paragraphs of the complaint are taken up with stating these facts, and some evidence bearing upon them. Succeeding paragraphs of the complaint set forth acts on the part of defendants, appellants, in the carrying out of the assigned contract and in the operation of the corporation of which plaintiff accepted stock in place of the promissory notes which he had surrendered.

The object of the action, as displayed by the prayer for relief, is that the contracts referred to in the complaint be rescinded or annulled; that plaintiff, upon surrender of the aforesaid· stock, be reinvested with the promissory notes above referred to, and so far as possible be put back into the position he would have held if the contracts in question had never been made.

There is a general allegation that the defendants, other than the Bankers Trust Company, had, prior to the execution of the contracts referred to, formed a deliberate design and purpose of fraudulently and by means of false representations inducing plaintiff to surrender the aforesaid promissory notes without consideration, and that everything they did was in pursuance of a fraudulent conspiracy to cheat and defraud plaintiff and to enrich themselves at his expense.

It seems to me to be quite evident that at least two quite distinct causes of action are embraced in this complaint. It is true that as plaintiff has framed his prayer for relief both of these causes lead to the same relief, viz., a cancellation of the contracts and a restoration of plaintiff to his original position, but the two causes are made up of entirely different allegations

of fact, must be supported by entirely different evidence, rest upon entirely different rules of law and are open to entirely different defenses.

The first cause of action is for a rescission of the contracts for the fraud which induced their making, thus asserting a claim that the contracts never had a legal existence but were void *ab initio*. What the court is asked to do upon this cause of action is not to cancel or rescind the contracts, but to adjudge that they never existed.

The second cause of action is, strictly speaking, one for cancellation or rescission. It assumes the original validity of the contracts, and asks that by reason of acts of the appellants done after the contracts had been made they be abrogated or rescinded. Thus the first cause of action was complete before any of the acts were done which constitute the second cause. It seems to me impossible to say that these are not distinct causes of action which, even if they be properly united in the same complaint, should be separately stated if, for no other reason, that defendants may be enabled to properly present such defenses as they may have. As was said by the present presiding justice of this court in *Realty Transfer Company* v. *Cohn-Baer-Myers & Aronson Co.* (132 App. Div. 286, 290): "One [cause of action] necessarily implies the non-existence of a contract for fraud *ab initio* and the other a valid contract and a subsequent breach." That the mere fact that both causes of action may lead to the same relief does not make them a single cause of action. Such a case was presented in *Freer* v. *Denton* (61 N. Y. 492), wherein it was said: "The facts stated in the complaint showed two causes of action, one to recover back the money paid, because the defendant refused to perform and repudiated the contract, and this was made out without proof of any fraud; and another to recover back the money paid on the ground that it was obtained from the plaintiff by fraud. These two causes of action could be united in the same complaint, but should *have been separately stated*."

The case of *Callanan* v. *K., A. C. & L. C. R. R. Co.* (199 N. Y. 268), cited at Special Term and much relied on by the respondent, is not in point, because the question we have now to deal with was not presented. There doubtless were two

causes cf action united in one count, but the complaint was not attacked on that ground either by motion to separate or by a demurrer for misjoinder. Nor do I consider it of any importance that the plaintiff says that he only intended to state a single cause of action. Whatever his intentions may have been, if he has in fact stated more than one cause of action, it is the defendants' right to have them separately stated.

We are not concerned upon this appeal to consider whether both causes of action, or either of them, are well pleaded, or if more than one cause of action is pleaded, whether they can properly be united in a single complaint. (*Astoria Silk Works* v. *Plymouth Rubber Co.*, 126 App. Div. 18.)

The general allegation that all the wrongful acts done by the appellants were so done as a consequence and in furtherance of a fraudulent conspiracy does not serve to transform into a single cause of action allegations which clearly constitute several distinct and separate causes of action, for a mere conspiracy to do a wrong does not, in this State, furnish the basis for a civil action. It is the fraud and damage resulting from the overt acts, and not the conspiracy to do those acts, which furnish the gravamen of a cause of action. "Where the conspiracy results in the commission of that which would be an actionable tort, whether committed by one or by many, then the cause of action is the tort, not the conspiracy." (*Green* v. *Davies*, 182 N. Y. 499; *Brackett* v. *Griswold*, 112 id. 454; *Bird* v. *Post*, 124 App. Div. 902.)

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion granted to the extent herein indicated, with ten dollars costs.

CLARKE, P. J., concurred.

Order affirmed, with ten dollars costs and disbursements.